# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
## Pensacola DIVISION

## CIVIL RIGHTS COMPLAINT FORM
## TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. §1983

PROVIDED TO
SANTA ROSA C.I. ON
APR 0 1 2012
FOR MAILING

ROBERT D. KORNAGAY,
Inmate # J13805
(Enter full name of Plaintiff)

Second Amended Complaint

vs.

CASE NO: 3:11cv428-LC/EMT
(To be assigned by Clerk)

SERGEANT F. GIVEN,
OFFICER W. WEEKLY,
OFFICER A. SLATTERY,
OFFICER SMITH,
OFFICER W. FENNER.

(Enter name and title of each Defendant. If additional space is required, use the blank area below and directly to the right.)

LIEUTENANT A. WILLIAMS
OFFICER D. JOHNSON
OFFICER J. ROBERTS
SERGEANT M. NOLAN

**ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:**

## I. PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff: Robert D. Hornsby
Inmate Number: J13805
Prison or Jail: Prison
Mailing address: Santa Rosa C.I.
5850 E. Milton RD
Milton, Fla 32583

## II. DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for every Defendant:

(1) Defendant's name: E. Given
    Official position: Sergeant
    Employed at: Santa Rosa C.I.
    Mailing address: 5850 E. Milton RD
    Milton, Fla 32583

(2) Defendant's name: W. Weekly
    Official position: Correctional officer
    Employed at: Santa Rosa C.I.
    Mailing address: 5850 E. Milton RD
    Milton, Fla 32583

(3) Defendant's name: A. Slattery
    Official position: Correctional officer
    Employed at: Santa Rosa C.I.
    Mailing address: 5850 E. Milton RD
    Milton, Fla 32583

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

Defendants, continued:

4) Defendant's name: Smith
   Official position: Correctional officer
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milton RD
   Milton, Fla 32583

5) Defendant's name: W. Fenner
   Official position: Correctional officer
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milton RD
   Milton, Fla 32583

6) Defendant's name: A. Williams
   Official position: Lieutenant
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milton RD
   Milton, Fla 32583

7) Defendant's name: D. Johnson
   Official position: Correctional officer
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milton RD
   Milton, Fla 32583

8) Defendant's name: J. Roberts
   Official position: Correctional officer
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milton RD
   Milton, Fla 32583

Defendants, Continued:

9) Defendant's name: M. Nolan
   Official position: Sergeant
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milton RD
                    Milton, Fla 32583

(2-B)

III.  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

IV.  **PREVIOUS LAWSUITS**

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.  Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
    Yes(  )               No(✓)

   1. Parties to previous action:
      (a) Plaintiff(s): _____
      (b) Defendant(s): _____
   2. Name of judge: _____   Case #: _____
   3. County and judicial circuit: _____
   4. Approximate filing date: _____
   5. If not still pending, date of dismissal: _____
   6. Reason for dismissal: _____
   7. Facts and claims of case: _____
      _____

   **(Attach additional pages as necessary to list state court cases.)**

B.  Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

    Yes(  )               No(✓)

   1. Parties to previous action:
      a. Plaintiff(s): _____
      b. Defendant(s): _____
   2. District and judicial division: _____
   3. Name of judge: _____   Case #: _____
   4. Approximate filing date: _____
   5. If not still pending, date of dismissal: _____
   6. Reason for dismissal: _____

3

7.  Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.  Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes(✓)   No( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.  Parties to previous action:
    a.  Plaintiff(s): Robert D. Hornaday
    b.  Defendant(s): Walter A. McNeil et, al.
2.  District and judicial division: Middle district / Jacksonville division
3.  Name of judge: James R Klindt   Case #: 3:08-CV-60-J-32-JRK
4.  Approximate filing date: June 2, 2008
5.  If not still pending, date of dismissal: Still pending
6.  Reason for dismissal: N/A
7.  Facts and claims of case: Federal Habeas Corpus Challenging State Court Criminal Conviction and Sentence.

**(Attach additional pages as necessary to list cases.)**

D.  Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes(✓)   No( )

1.  Parties to previous action:
    a.  Plaintiff(s): Robert D. Hornaday
    b.  Defendant(s): M.L. Carnahan
2.  District and judicial division: Northern District and Pensacola Division
3.  Name of judge: Elizabeth M. Timothy   Case Docket # 3:09 CV 454/MCR/EMT
4.  Approximate filing date: December 17, 2009   Dismissal date: unknown
5.  Reason for dismissal: Voluntary dismissal

4

Second Action
1. (a) Robert D. Hornagay
   (b) Officer Burt, et al.
2. Northern District and Pensacola Division
3. Elizabeth M. Timothy   Case # 3:09 cv 281/LAC/EMT
4. June 28, 2009
5. Voluntary dismissal, on May 20, 2011.
6. Settlement
7. Defendants retaliated against the Plaintiff for filing grievances and used excessive force.

Third Action
1. (a) Robert D. Hornagay
   (b) M.L. Carnahan
2. Northern District and Pensacola Division
3. Elizabeth M. Timothy   Case # 3:09 cv 454/MCR/EMT
4. December 17, 2009
5. Unknown
6. Voluntary dismissal
7. Defendants rejected Plaintiff's mail ordered publication without a legitimate penological objectives.

(4-A)

6. Facts and claims of case: <u>Defendant rejected Plaintiff's mail ordered publication without a legitimate penological objective.</u>

**(Attach additional pages as necessary to list cases.)**

## V. STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes.</u> You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

1) On May 13, 2010, Defendant Given went to Plaintiff's celldoor, and he ordered the Plaintiff to handover the copies to all the inmate grievances the Plaintiff filed. Defendant Given looked over all the grievances then handed them back to the Plaintiff.

2) On May 14, 2010, Defendant Given placed the Plaintiff on heightened security status, and he made the following statement to the Plaintiff: "I have broke the best Writ Writers in D.O.C., and I'm going to break you the hard way, it might not be right now, but it will be soon, mark my word." Defendant Given continued making similar remarks throughout the months of May and June - all directed toward the Plaintiff.

3) On July 8, 2010, at approximately 8:00 am, the Plaintiff called Defendant Given to his cell, and he informed Defendant Given that his cellmate, who was not in the cell at the moment, has been making strong sexual advances toward him, and his cellmate, Sterling Pope, was trying to force him into having "gay sex". The Plaintiff informed Defendant Given that he was in fear of being raped, when his cellmate returned to the cell.

4) As to the claim in paragraph 3, Defendant Given dismissed the Plaintiff's request for protection, by stating the following: "your always writing grievances or complaining about something your just a trouble maker, so I don't want to hear that shit." Defendant

5

Given then walked away from the Plaintiff's cell, despite the Plaintiff's repeated calls for help and request for a cell change.

5) Upon information and belief, at approximately 8:30 am, Defendant Given walked onto the recreation yard laughing, as he explained to Defendants Weekly, Fenner, and Slattery that "Inmate Hornaday is in there crying for our help, because inmate Pope is trying to take his a**. I say since he want to write us up on every corner, we let him fight for his a**." The mentioned Defendants all start laughing and slapping "high fives" as they all agreed.

6) As to the claim in paragraph 5, Prior to July 8, 2010, Defendants Given and Weekly complimented inmate Pope on his ~~fighting~~ advance fighting abilities. On several occasions these Defendants would threaten to place inmates in the same cell or recreation cage with inmate Pope, in order to make inmates comply with a order.

7) At approximately 9:19 am, the Plaintiff's cellmate, Sterlin Pope, was allowed to return to the same cell with the Plaintiff, despite the Plaintiff's objections. Once the Plaintiff and inmate Pope were locked in the cell, inmate Pope start making more aggressive sexual advances toward the Plaintiff.

8) While Defendants Weekly, Slattery, and Fenner made their routine security checks, the Plaintiff informed each one of them that he was in danger and need to be moved to another cell because his cellmate was trying to force him into having "gay sex".

9) As to the claim in paragraph 8, the mentioned Defendants never made any attempts to investigate the Plaintiff's claims or seperate the inmates. Defendants Weekly, Slattery, and Fenner all gave similar or the same response to the Plaintiff's request for help: "I'll tell Sgt Given about your situation." and/or "there is to much going on in the dormitory to deal with your crying." Defendant Fenner responbe to the Plaintiff's request for help was "Just file another one of your grievances about it."

Statement of facts, Continued

10) Once it became obvious that the Defendants were not going to help the Plaintiff, inmate Pope tried to physically force the Plaintiff into performing oral sex on him.

11) As to the claim in paragraph 10, the Plaintiff made it to the cell door and started to bang on the window; he kept banging until Defendant Smith, who was on the cellblock serving disciplinary reports, stopped at the cell door, and the Plaintiff informed him that inmate Pope was trying to force him into sexual acts, and he needed to be moved to another cell because he was in fear of being raped.

12) As to the claim in paragraph 11, Defendant Smith sarcastically directed inmate Pope to stay at the back of the cell, and he sarcastically directed the Plaintiff to stay at the cell door, while he go get help.

13) At approximately 11:40 am, Defendant Smith left Plaintiff's cell door and never returned. Defendant Smith never made any attempts to investigate the Plaintiff's claims or seperate the inmates.

14) As to the claim in paragraph 13, Defendant Smith was seen walking directly out of D-dormitory, without ever making a attempt to get help from any of the officers he walked past inside or outside of the dormitory. Defendant Smith was seen walking down the prison compound at a slow rate while smoking a cigarrette, never to be heard from again.

15) At approximately 12:00 pm, the Plaintiff starts kicking his cell door in attempts to get help from the Defendants.

16) As to the claim in paragraph 15, Defendants Weekly and Slattery went to the Plaintiff's cell door, and the Plaintiff informed them that he was in fear of being raped, and he need protection from inmate Pope. Inmate Pope took it upon himself to inform Defendants Weekly and Slattery that it was in the Plaintiff's best interest that he [Plaintiff] be moved to another cell, but to no avail.

7

Statement of Facts, Continued

17) At approximately 1:00 pm, inmate Pope covered the cell door window, which blocked the officer's view as they conducted their security check, and forced the Plaintiff to perform oral sex on him. The Plaintiff was forced to perform oral sex in different sessions, stopping whenever a officer came on the wing.

18) As to the claim in paragraph 17, Defendant Fenner, while conducting a security check, walked pass the Plaintiff's cell door, which had a towel blocking his view, and mocked the Plaintiff by saying "I see the big bad writ writer ain't so bad without his pen."

19) At approximately 1:40 pm, inmate Pope raped the Plaintiff using his fingers and penis to penetrate the Plaintiff's anus, after smashing the Plaintiff's head against the wall almost causing the Plaintiff to lose consciousness.

20) As to the claim in paragraph 19, the Plaintiff made it to his cell door and start kicking and screaming for help, but no one ever came to help him; his kicking and screaming only resulted in him receiving unsatisfactory marks on his special housing unit log.

21) Defendant Given's voice was then heard over the intercom making lewd sounds as if to simulate the sounds of sexual intercourse.

22) As to the claim in paragraph 21, other inmates start kicking their cell doors, in attempt to get help for the Plaintiff.

23) At approximately 2:15 pm, the Plaintiff made it to his back window, where he seen Defendants Williams and Given. The Plaintiff informed Defendant Given that he was raped by inmate Pope and requested help.

24) Based upon documentation authored by Defendant Williams, Defendant Given informed Defendant Williams, the housing lieutenant for the 7 to 3 p.m. shift, that the Plaintiff allege to have been raped by inmate Pope.

8

Statement of Facts, continued:

25) For approximately 15 minutes, Defendants Williams and Owen continued to stand outside and read their newspaper, while the Plaintiff remained locked in the cell with inmate Pope.

26) Defendant Williams never provided or did anything in order to have the Plaintiff provided with medical treatment.

27) At approximately 2:28pm, Defendants Owen and Slattery removed the Plaintiff and inmate Pope from the cell; they were both placed in different shower stalls.

28) As to the claim in paragraph 27, the Plaintiff informed Defendants Owen and Slattery that he was in excruciating pain and need to see medical. The Plaintiff then showed both Defendants the blood in his underwear. Both Defendants witnessed blood transfer from Plaintiff's buttock to his fingers.

29) The Plaintiff's request to see medical staff only resulted in the Plaintiff being mocked by both Defendants. Defendant Owen denied the Plaintiff's request by stating "F**k you, you faggot b**ch."

30) As to the claim in paragraph 29, Defendant Owen and Slattery witnessed the Plaintiff tumble to the floor of the shower in excruciating pain; the Plaintiff was unable to get back up and had to lay on his side; however, both Defendants left the Plaintiff in the shower without monitoring him and/or contacting medical staff and/or providing him with requested pain medication.

31) At approximately 3:05 p.m., a new shift of officers arrived, and the Plaintiff informed Defendants Johnson and Roberts that he was raped and in need of medical help. The Plaintiff informed both Defendants that he was in pain and showed them the blood in his underwear; he also showed the Defendants the mixture of dried and fresh blood that dripped down his leg.

32) As to the claim in paragraph 31, Defendant Johnson told the Plaintiff "we don't have time to escort no cry babies to medical or to get the nurse down here. We have to

9

Statement of Facts, continued:

Shower all these inmates, feed all these inmates, and pick up laundry so act like your in prison for once and toughen up." Defendant Roberts then stated "You could go cry to the Sergeant about seeing medical, but he won't override our decision."

33) At approximately 3:10 p.m., inmate Pope was escorted back to the cell, where he was directed by Defendant Johnson to pack all his personal property and to clean up anything that could be used against him.

34) At approximately 3:17 p.m., the Plaintiff was escorted back to his cell, where he was housed alone. The Plaintiff requested that Defendant Johnson allow him to speak to Defendant Williams. Defendant Johnson denied Plaintiff's request by stating "Lt. Williams already know your little Bo-Bo is bleeding and hurting; before he went home, him and Sgt. Gwen were cracking about it."

35) At approximately 3:30 p.m., the Plaintiff called the Sergeant, Defendant Nolan, to his celldoor and informed him that he was raped, and he was in need of medical treatment because he was in intense pain and bleeding. The Plaintiff then showed Defendant Nolan the blood stained napkin he was using to clean himself.

36) As to the claim in paragraph 35, Defendant Nolan informed the Plaintiff to hold on for a few minutes while he get someone to escort the Plaintiff to medical.

37) Moments after speaking with Defendants Johnson and Roberts, Defendant Nolan returned to the Plaintiff's cell and ordered the Plaintiff to clean up the blood, and the Plaintiff might be allowed to see Medical once everything in the dorm is complete.

38) The Plaintiff's request for pain medication was also denied by Defendants Nolan, Johnson, and Roberts

10

Statement of facts, continued:

39) At approximately 4:15 p.m., the Plaintiff start suffering from dizziness and sharp intense pain in his abdomen, which caused the Plaintiff to bang on his celldoor in attempt to get help from the Defendants, but to no avail.

40) As to the claim in paragraph 39, the Plaintiff's attempt to get help only resulted in Defendants Johnson and Roberts taunting the Plaintiff.

41) At approximately 5:30 p.m., the Defendants were complete with everything in the dormitory, so Defendant Johnson contacted lieutenant Nelson, who is not a party in this case.

42) As to the claim in paragraph 41, lieutenant Nelson and Defendant Johnson approached the Plaintiff's cell. The Plaintiff informed the lieutenant that he was raped and needed to see medical. The Plaintiff then showed the lieutenant the blood in his underwear, and he handed Nelson a note explaining his situation.

43) Lieutenant Nelson immediately ordered the Defendants to get the Plaintiff some medical attention.

44) At approximately 6:00 p.m., the Plaintiff was seen by Medical staff and given medication to alleviate the pain he was experiencing; he was ordered to soak his rectum in a medicated liquid. The Plaintiff was also prescribed medication designed to prevent him from contracting HIV and pain medication for a (30) day period.

45) As a direct result of Defendant Given, Weekly, Slattery, Smith, and Fenner deliberate indifference to the Plaintiff's safety, the Plaintiff suffered excruciating pain at the time and after being anally penetrated. He experienced sporadic and frequent sharp and intense pain from his rectum for approximately three weeks, which was only alleviated by pain medication. The Plaintiff also suffered a bruise on the head.

11

Statement of facts, Continued:

46) As a direct result of the Plaintiff being physically forced to perform oral sex on inmate Pope, the Plaintiff suffered from nausea, sore neck, and effects of choking and gagging.

47) Defendant's willful disregard for a easily recognized medical need aggravated the injuries already sustained by him. The Plaintiff Isaard suffering from dizziness and sharp intense pain in his lower abdomen, which also caused the Plaintiff body to be overwhelmed with numbness as he continued to lose blood.

48) As a proximate result of the Defendant's actions, the Plaintiff has suffered physical injury, post-traumatic stress disorder, episodes of panic attacks, sleeplessness, insecurity, and anxiety. The Plaintiff suffers and will continue to suffer extreme mental anguish and emotional distress, depression, humiliation, and on going embarrassment resulting from his treatment by the Defendants, other correctional officers, and most inmates, who now refer to the Plaintiff as "she", "her", or different female names.

49) Upon information and belief, on July 9, 2010, Defendant Given went to all three wings in Delta dormitory and informed all the inmates of the following: "That writ writer hornagdy, you motherf**kers look up to, got his ass took yesterday. I told that motherf**ker I will get him sooner or later. Now, who else want to be a writ writer?"

50) Most of the claims made in this complaint can be supported by videotape evidence.

51) The Plaintiff has exhausted his administrative remedies as to each claim in this complaint

12

## VI. STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

52) Defendant Given violated the Plaintiff's First Amendment rights to the U.S. Constitution, when failing to protect the Plaintiff from being raped in order to retaliate against him for filing grievances.

53) Defendants Given, Slattery, weekly, Fenner, and Smith violated the Plaintiff's Eighth Amendment rights to the U.S. Constitution, when failing to protect the Plaintiff from a known risk of sexual assault.

## VII. RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/statutes.

WHEREFORE, the Plaintiff respectfully request that this court: A) Declare that the acts and omissions described herein has violated the Plaintiff's rights under the constitution and laws of the U.S., B) Order the Defendants to pay the Plaintiff punitive, compensa-

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

4/1/12
(Date)

Robert D. Youngay
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☑ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the 1st day of April, 2012.

Robert D. Youngay
(Signature of Plaintiff)

Revised 03/07

13

Statement of Claims, Continued:
B) Defendants Given, Williams, Slattery, Johnson, Roberts, and Nolan violated the Plaintiff's Eighth Amendment rights to the U.S. Constitution, when being deliberately indifferent to the Plaintiff's dire and obvious medical needs.

Relief Requested, Continued:
tory, and nominal damages.
C) Allow all Defendants to be sued in their "Individual" capacity.
D) Grant other just and equitable relief that this court deems necessary.
E) Order Defendants to pay all legal cost and fees, including Attorney fees in the event counsel is appointed for the Plaintiff.
F) Plaintiff demands a trial by jury.

4/1/12                                   /s/ Robert D. Loungway
Date                                     Signature of Plaintiff

14

Robert D. Hornaday DC#J13805
Santa Rosa Correctional Institution
5850 E. Milton RD
Milton, Florida 32583

Clerk, U.S. District Court
Northern District of Florida
1 North Palafox St., Suite 226
Pensacola, Fl 32502



PENSACOLA FL 325
MON 02 APR 2012 PM