IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT D. KORNAGAY,
      Plaintiff,

vs.                                                    Case No.: 3:11cv428/LAC/EMT

SERGEANT GIVEN, et al.,
      Defendants.

---

## REPORT AND RECOMMENDATION

      This cause is before the court upon Plaintiff's second amended civil rights complaint filed pursuant to Title 42 U.S.C. § 1983 (doc. 23).  From a review of this complaint, it is evident that Plaintiff has failed to state an actionable claim against one of the named Defendants in this action.  Therefore, the complaint should be dismissed as to this Defendant, but allowed to proceed with respect to the remaining claims and Defendants.

BACKGROUND

      Plaintiff is an inmate incarcerated in the Florida Department of Corrections ("DOC") serving a life sentence for home invasion robbery and sexual battery.[1]  He is incarcerated at the Santa Rosa Correctional Institution ("SRCI"), as he was at the time the events giving rise to this complaint took place (doc. 23 at 2).  Named as Defendants in this action are Sergeant F. Given, Officer W. Weekly, Officer A. Slattery, Officer Smith, Officer W. Fenner, Lieutenant A. Williams, Officer D. Johnson, Officer J. Roberts and Sergeant M. Nolan.  Plaintiff alleges that in May of 2010 Sgt. Given, after examining grievances Plaintiff had filed, told Plaintiff that he would "break" Plaintiff as Given had broken the best writ writers in the DOC, and that he made similar comments for the next couple of months (*id*. at 8).  On July 8, 2010, when Plaintiff complained to Given that his cellmate had been

---

[1]  http://www.dc.state.fl.us/ActiveInmates/detail.asp?Bookmark=1&From=list&SessionID=847081928

making sexual advances toward him and he was afraid of being raped, Given dismissed his complaint saying that Plaintiff was "always writing grievances or complaining about something" and simply walked away (*id.* at 8–9). Plaintiff's cellmate, inmate Sterling Pope, who is also serving a life sentence, was allowed to return to Plaintiff's cell over Plaintiff's objection (*id.* at 9). When Defendants Weekly, Slattery and Fenner passed by making routine security checks, Plaintiff told them that he was in danger and needed to be separated from his cellmate, but they were unresponsive to his concerns (*id.*). Inmate Pope allegedly tried to force Plaintiff to perform oral sex on him, but Plaintiff ran to the cell door and attracted the attention of Defendant Smith (*id.* at 10). Smith told Pope to stay at the back of the cell and told Plaintiff to stay at the front of the cell while Smith went for help. Smith, however, left Plaintiff's cell at 11:40 a.m., and he never returned or—according to Plaintiff's allegations—attempted to get help from any of the other officers or investigate Plaintiff's claims (*id.* at 10). At around 12:00 p.m. Plaintiff kicked on his cell door attracting the attention of Defendants Weekly and Slattery. At the time, inmate Pope even told these two Defendants that it was in Plaintiff's best interest to be moved, to no avail (*id.*).

Around 1:00 p.m., Pope covered the cell door window and forced Plaintiff to perform oral sex on him out of view of officers performing security checks. During this time, Defendant Fenner walked past the cell door and "mocked" Plaintiff by saying "I see the big bad writ writer ain't so bad without his pen" (doc. 23 at 11). At about 1:40 p.m., Pope raped Plaintiff with both his fingers and his penis after having smashed Plaintiff's head against the wall with such force that Plaintiff almost lost consciousness (*id.*). Plaintiff kicked and screamed at the cell door again, to no avail. He asserts that he heard Defendant Given's voice over the intercom making lewd sounds as if to simulate the sounds of sexual intercourse (*id.*). At about 2:15 p.m., Plaintiff saw Defendants Williams and Given from the back window of his cell. He informed Given that he had been raped and asked for help (*id.*). He states that "upon information and belief" Given told Williams about the alleged rape. Plaintiff states that based on unspecified "documentation authored by Williams" he believes that Given reported Plaintiff's allegations of rape to Williams (*id.*).

Defendants Given and Slattery removed Plaintiff and Pope from their cell at about 2:28 p.m. and put them in the shower (doc. 23 at 12). Plaintiff informed them that he was in pain and needed to see medical, and he showed them blood in his underwear and blood that transferred from his

buttocks to his fingers[2] (*id.*).  Defendants denied his request to be taken to medical, even after Plaintiff tumbled to the shower floor in excruciating pain.  Instead they left him there until the new shift of officers arrived at 3:00 (*id.*).

At 3:05 p.m., Plaintiff informed Defendants Johnson, and Roberts about the sexual assault and his need for medical attention, again referring to the injuries to his rectal area (doc. 23 at 12). Defendant Johnson essentially told Plaintiff that they had no time to take him to medical and Roberts told Plaintiff to go cry to the sergeant (*id.* at 12–13).  At 3:10, Pope was escorted back to the cell he had shared with Plaintiff where Defendant Johnson told Pope to pack all his personal property and clean up anything that could be used against him (*id.* at 13).  Plaintiff was escorted to the cell at 3:17 p.m., at which time he asked Johnson to let him talk to Lt. Williams.  Johnson denied his request, stating "Lt. Williams already know your little Bo-Bo is bleeding and hurting; before he went home, him [sic] and Sgt. Given were cracking about it" (*id.*).

At 3:30 p.m., Plaintiff called Sergeant Nolan to his cell door to report the rape and request medical attention for the rectal pain and bleeding from the incident (doc. 23 at 13).  Nolan asked Plaintiff to wait while he found someone to take Plaintiff to medical.  Instead, Nolan spoke to Defendants Johnson and Roberts after which he returned and told Plaintiff to clean up the blood and that he might be able to go to medical once things in the dorm were in order (*id.*).  Plaintiff reports that at about 4:15 p.m. he began feeling dizzy and experiencing sharp abdominal pains.  He banged on his cell door again in an attempt to get help, which only resulted in Johnson and Roberts taunting him (*id.* at 14).  At about 5:30 p.m., Defendant Johnson contacted the shift lieutenant, Lt. Nelson, who is not a Defendant in this case.  When Lt. Nelson came to Plaintiff's cell, Plaintiff showed him the blood in his underwear and handed him a handwritten note explaining what had happened (*id.*). The lieutenant told Defendants to get Plaintiff some medical attention immediately (*id.*).

Plaintiff was seen by medical at about 6:00 p.m., at which point he was prescribed pain medication, given medicated liquid to soak his rectum, and was prescribed medication designed to prevent him from contracting HIV (doc. 23 at 14).  Plaintiff contends that as a result of the deliberate

---

[2] Plaintiff does not allege that he ever complained of or sought treatment for a head injury from the blow he allegedly suffered before the alleged sexual assault.

indifference of Defendants Given, Weekly, Slattery, Smith and Fenner, he suffered excruciating rectal pain at the time of the anal penetration and sporadically thereafter for approximately three weeks, as well as a bruise on the head (*id*).  He also contends that he suffered from nausea, a sore neck, and the effects of choking and gagging as a result of being forced to perform oral sex (*id.* at 15).   Plaintiff asserts that in addition to the physical injury, he has suffered post-traumatic stress disorder, panic attacks, sleeplessness, insecurity and anxiety (*id.*).  He further claims he suffers mental anguish and emotional distress, depression, humiliation and ongoing embarrassment as a result of his treatment by corrections staff and inmates as a result of the attack (*id.*).  Defendant Given allegedly visited other dormitories in the prison and informed inmates that "that writ writer Kornagay . . . got his ass took yesterday . . . Now who else wants to be a writ writer?" (*Id.*).

Plaintiff contends that Defendant Given violated his First Amendment rights by failing to protect him in retaliation for his filing of grievances (doc. 23 at 16).  Defendants Given, Slattery, Weekly, Fenner and Smith allegedly violated Plaintiff's Eighth Amendment rights by failing to protect him from Pope's assault, and Defendants Given, Williams, Slattery, Johnson, Roberts and Nolan allegedly were deliberately indifferent to Plaintiff's serious medical needs (*id*. at 16–17).  Plaintiff seeks declaratory and injunctive relief, compensatory, punitive and nominal damages, and any other relief that may be proper (*id.* at 17).

DISCUSSION

Plaintiff was previously provided with detailed information about the legal standards governing actions brought pursuant to section 1983.  He has amended his complaint and corrected the majority of the deficiencies; therefore, further amendment is not necessary.  However, because Plaintiff still has not stated a claim against one Defendant, this individual should be dismissed as a Defendant before the remaining Defendants are served.

As part of his complaint, Plaintiff alleges that Given, Slatery, Weekly, Fenner and Smith failed to protect him from Pope's assault.  In order to state a claim for a violation of his right to be free from cruel and unusual punishment, "there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature."  Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting Wright v. El Paso County Jail, 642 F.2d 134, 136 (5th Cir. 1981)).  "An official's deliberate indifference to a known danger violates an

inmate's Eighth Amendment rights."  McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995).  Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted); Rodriguez v. Secretary for the Dept. Of Corrections, 508 F.3d 611, 616–17 (11th Cir. 2007); Purcell ex. Rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1319 (11th Cir. 2005); Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).  However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for the prison officials responsible for the victim's safety.  Farmer, 511 U.S. at 834; Purcell; Galloway, supra.  To be held liable under the Eighth Amendment for failing to prevent an attack from other inmates, a correctional official must be found to have known of and recklessly disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837; Purcell, 400 F.3d at 1319–20 (plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.") (citation omitted); Rodriguez, supra.  When officials become aware of threats to an inmate's health and safety, the Eighth Amendment proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.  McCoy, 47 F.3d at 407; Marsh v. Butler County, Alabama, 268 F.3d 1014, 1027 (11th Cir. 2001).  The court is satisfied that Plaintiff has presented allegations sufficient to state a preliminary claim against Given, Slattery, Weekly and Fenner.  The same cannot be said of his allegations against Defendant Smith.  In fact, as the court noted in its previous order (doc. 20), from Plaintiff's allegations, Smith appeared sympathetic to Plaintiff's claim and told Plaintiff that he would get help for Plaintiff.  However, based merely on the fact that Smith never returned, Plaintiff believes that he failed to follow up in any way on Plaintiff's claims.  Plaintiff asserts that Smith "was seen" walking out of the dormitory without making an effort to get help or investigate Plaintiff's complaint, and that he "was seen walking down the prison compound at a slow rate while smoking a cigarette" (doc. 23 at 10).  These allegations are insufficient to rise to the level of a constitutional violation, and Plaintiff's claim against Defendant Smith should be dismissed.

Because the court finds that in all other respects the complaint is legally sufficient, the remaining Defendants should be served and should be required to respond to Plaintiff's allegations.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Plaintiff's claims against Defendant Officer Smith be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted.

2.      That this case be referred to the undersigned for further proceedings on Plaintiff's claims against the remaining Defendants.

**DONE AND ORDERED** this 1st day of August 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**